ALFRED H. LINDLEY *vs.* CHARLES R. GROFF and others.

## July 30, 1887.

**Limitation of Actions—Adverse Possession—Tenants in Common.—** Where a deed as made runs to two grantees jointly, and one only enters into actual possession, such possession is not to be deemed adverse to the other joint owner or his heirs, until an ouster or the assertion of some hostile claim denoting an intention to hold adversely.

**Same—Reversioners.—**The statute does not run against the rights of reversioners pending an intervening life-estate.

**Contract—Construction — Agreement for Conveyance.—** In construing a contract, the intention of the parties as gathered from the whole instrument must control. And though in one part formal and apt words of conveyance be used, yet if, from other parts of the writing taken and compared together, it appears that a mere agreement for a conveyance is all that was intended, this intent must prevail.

**Vendor and Purchaser—Deposit of Deed in Escrow—When the Title passes.—**Where, in pursuance of the terms of an executory contract for the sale of land, a deed is executed by the vendor, and deposited in escrow with a third person, to be delivered to the vendee on the performance by the latter of certain conditions, as specified in such contract, the general rule is that the title does not pass to the grantee until after the performance of the condition. But in some cases justice or necessity may require the application of a different rule, to prevent the operation of the deed from being defeated. And so, if either of the parties die before the condition is performed, and such condition is nevertheless subsequently performed as stipulated, the deed is good, and will take effect from the first delivery.

Appeal by defendants from an order of the district court for Hennepin county, *Young*, J., presiding, refusing a new trial. The action was tried by the court, and judgment directed for plaintiff. The ma-

terial portions of the contract of sale referred to in the opinion are as follows:

"This agreement made this 27th day of March, 1863, between B. B. Decker, * * * of the first part, and E A. Groff and A. G. Groff, * * * of the second part, witnesseth: That the said party of the first part, for and in consideration of the sum of $400 to be paid to the party of the first part by the parties of the second part, at the time and in the manner as hereinafter mentioned, has granted, bargained, and sold, and by these presents does grant, bargain, and sell unto the said party of the second part, his heirs and assigns, all the following described piece or parcel of land;" (here follows the description;) "and to make, execute, acknowledge, and deliver unto the party of the second part a deed of said premises containing the usual full covenants of title, which deed shall be executed in the manner aforesaid by the wife of the party of the first part and to be delivered within twelve months from the date hereof; and the party of the first part also agrees to cause to be cancelled and discharged a certain indenture of mortgage," (describing it,) "within the time aforesaid; and the said party of the second part, in consideration of the premises, agree to purchase the said premises of the party of the first part, and pay therefor the sum of $400 as follows: $25 on the execution of these presents, and the remainder of said sum upon the cancellation of said mortgage and delivery of said deed as hereinbefore provided. The said party of the second part is to have possession of said premises upon the execution of these presents."

*Smith & Reed,* for appellants.

*Gilfillan, Belden & Willard,* for respondent, that the deed to Groff was never delivered in escrow, cited *Worrall* v. *Munn,* 5 N. Y. 229, 237, (55 Am. Dec. 330;) *Millett* v. *Parker,* 2 Met. (Ky.) 608; *McCann* v. *Atherton,* 106 Ill. 31; *Elmore* v. *Marks,* 39 Vt. 538; 3 Washb. Real Prop. 318.

VANDERBURGH, J.[1] The plaintiff alleges actual possession of the real estate described, and asks that the adverse claim of defendants be determined. The defendants' answer admits plaintiff's posses-

---

[1] Berry, J., because of illness, took no part in this case.

sion and sets up title in fee to an undivided interest therein, de-
rived from their ancestor, A. G. Groff, deceased.   The evidence shows
that the plaintiff claims title under E. A. Groff, also deceased.   Be-
fore the decease of A. G. Groff, he and E. A. Groff entered into a con-
tract with one Decker, who then owned the property, for the purchase
thereof, for the sum of $400.   This contract, which was dated March
27, 1863, and duly recorded, provided for the execution·of a deed
of the premises, and the delivery thereof within 12 months from the
date of the contract, and that the vendor should cause a certain mort-
gage thereon to be cancelled of record within that time; and the ven-
dees on their part covenanted to pay $25, at the date of the con-
tract, and the balance of the purchase price on the cancellation of
the mortgage and the delivery of the deed, and were to have im-
mediate possession.   Within the year, A. G. Groff died intestate.
Previous to his death, however, Decker, who was a non-resident, had
executed a deed of the premises, which bore date March 28, 1863,.
and ran to both A. G. Groff and E. A. Groff, as grantees, and was
by him forwarded to one S. D. Snell, who was the agent and attor-
ney in fact of Decker in the matter of the sale.   It was received
by the latter more than six months before the death of A. G. Groff.
The evidence tends to show that it was sent to him by Decker to be
delivered to the vendees named in the contract, and in pursuance
thereof, and upon fulfilment of the conditions therein, and that the
delivery thereof to them by him was delayed solely by the fact that the
mortgage referred to in the contract was not sooner cancelled of record,
though it had been paid long before.   Upon its cancellation, subse-
quent to A. G. Groff's death, and the payment of the purchase-money,
which was advanced by E. A. Groff, the deed was delivered to him,.
in fulfilment of the contract.   A. G. Groff left him surviving his widow,
Catharine C. Groff, his mother, and other heirs.   E. A. Groff pur-
chased and procured an assignment of the interest of Catharine C.
Groff in the contract and lands therein mentioned as a representa-
tive and heir-at-law of A. G. Groff, and went into possession of the
premises, which he continued to occupy until his death in 1871.   And
thereafter they were sold as his property, under direction of the probate
court, by his executor, and subsequently purchased by the plaintiff,

who received a deed therefor in 1873, and has since been in the actual possession.

1. Under the deed in question, E. A. Groff acquired title to an undivided half of the premises, and was entitled to the possession thereof as tenant in common. His possession was not, therefore, adverse to the owners of the remaining interest. There is no evidence tending to show an ouster and adverse possession until the sale and purchase under which plaintiff claims. *Lowry* v. *Tilleny*, 31 Minn. 500, (18 N. W. Rep. 452.) If by virtue of the contract, and the delivery of the deed thereunder, the legal title to the other undivided half, by fiction of law, became vested in the heirs of A. G. Groff, then Catharine C. Groff, under the existing statutes, was entitled to a life-estate, and the transfer of her interest in the contract and premises, as heir-at-law, simply passed such life-estate in the premises, and there was and could be no adverse possession as to the remaining heirs. 1 Washb. Real Prop. *97; 7 Wait, Act. & Def. 258, and cases. The statute of limitations cannot, therefore, be invoked in this action as a bar to the defendants' legal rights in the property, if any they have.

2. It is contended by the defendants' counsel that the contract was by itself operative and effectual to pass the title to the Groffs, because by its terms it purports to grant and sell the same *in præsenti.* But the intention of the parties must be gathered from the whole instrument, and though it may in one part use the formal and apt words of conveyance, yet if, from other parts of the instrument taken and compared together, it appears that a mere agreement for a conveyance is all that was intended, the intent must prevail. *Jackson* v. *Myers*, 3 John. 388, 396, (3 Am. Dec. 504.) Tested by this rule, it is too clear to need any argument that this instrument is but an executory contract to convey the land upon the performance of certain conditions.

3. The most important question in the case is in respect to the nature and effect of the delivery of the deed by Decker to Snell. We do not think it material that Snell was his agent and attorney in fact in making the sale: he was a stranger to the deed, and might hold it in escrow, or it might be delivered to him as the deed of the grantor

presently, to be delivered over to the grantee on the happening of a future event. The intention of the parties as gathered from the evidence in each case must govern. *Clark* v. *Gifford*, 10 Wend. 310; *Andrews* v. *Farnham*, 29 Minn. 246, (13 N. W. Rep. 161.) Here was a contract, in pursuance of which the deposit was made, requiring the deed to be delivered upon the performance of certain conditions. It was a natural and proper thing for Decker to do, to deposit the deed with any party whom he could safely trust, to deliver over on the performance of such conditions. And though the findings of the court are not very complete or explicit on the subject, we think it is not questioned that the deed was to be finally delivered by Snell, on the payment of the money, after the cancellation of the mortgage of record, in accordance with the terms of the agreement. We think the evidence tended to show a delivery in escrow. The general rule is that where a deed is deposited as an escrow, the title does not pass till the second delivery—that is to say, a delivery to the grantee by the custodian, after the performance of the condition. But this rule is not inflexible, and does not apply where justice or necessity requires a resort to fiction. In such cases, the deed takes effect by relation from the first delivery, in order that the operation of the deed may not be frustrated by events transpiring between the first and second delivery. 4 Kent, Comm. *454. "It is a well-settled rule," says the court in *Ruggles* v. *Lawson*, 13 John. 285, (7 Am. Dec. 375,) "with respect to an escrow, that if either of the parties die before the condition is performed, and afterwards the condition is performed, the deed is good and will take effect from the first delivery." And this is the settled rule. *Perryman's Case*, 5 Coke, 84; Shep. Touch. 59; *Jackson* v. *Rowland*, 6 Wend. 666; *Stone* v. *Duvall*, 77 Ill. 475, 480; 16 Am. Dec. 40, (Note to *Jones* v. *Jones*, 6 Conn. 111.) If, then, this deed was deposited in escrow, the title to an undivided half of the premises enured to the heirs of A. G. Groff, on its final delivery, the same as if it had been delivered in his life-time. The final delivery was evidently in pursuance and satisfaction of the contract. The record of the contract and deed was sufficient to show the chain of title, and to put purchasers upon inquiry.

Order reversed.