COLLINS, Appellant, v. KARES, Respondent.

(216 N. W. 880.)

(File No. 5769. Opinion filed December 20, 1927.)

*P. A. Hosford,* of Winner, for Appellant.
*Windsor Doherty,* of Winner, for Respondent.

MORIARTY, C. This matter is now before the court upon a second appeal. On the first appeal the judgment and order of the trial court were reversed, and the case remanded for a new trial. The opinion in said former appeal may be found in 46 S. D. at page 385, 193 N. W. 130. The appeal in that instance was from a judgment entered in accordance with a verdict for the defendant, rendered by direction of the court. The record of the second trial, now before us for review, shows the relevant facts to be as follows:

On March 2, 1920, an abstract of title and a warranty deed purporting to convey the land covered by said abstract were deposited with the defendant, accompanied by an agreement, in writing, as follows:

"3-2-1920."

"When $1,000 is deposited for the credit of F. S. Williams, this deed and abstract is to be turned over to C. E. Pinney and John F. Collins. Not to be turned over to either one alone, but in the presence of both John F. Collins and C. A. Pinney.

"It is acknowledged by Collins that C. A. Pinney has $1,520 in this deal. At any time that John F. Collins deposits $1,730 to the credit of Clarence A. Pinney, the deed and abstract is to be turned over to John F. Collins.

"C. A. Pinney.
"Jno. F. Collins."

The deed described in this agreement was duly signed and acknowledged, but was incomplete, in that it did not name any grantee.

On December 31, 1920, Collins delivered to Kares a written instrument, signed and acknowledged by C. A. Pinney, whereby Pinney assigned to Collins and F. S. Williams all his right, title, and interest in the land described in the papers held by Kares, as above set forth. At the same time Collins also delivered to Kares a writing wherein F. S. Williams stated that he waived the payment to him, or deposit to his credit, of the $1,000 mentioned in the agreement, and wherein Williams directed that the papers held by Kares be delivered to Collins. At the time when he delivered the assignment and the waiver to Kares, Collins served upon Kares a written demand for the immediate delivery to him of the deed and abstract held on deposit as aforesaid. In this written demand Collins included a statement that he had sold the land described in said deed and abstract at a price of $66.50 per acre, that the purchaser demanded the delivery of the outstanding deed as a condition to the purchase of the property, and that, in case Kares failed to comply with this demand, he would be held liable for any damages which Collins might suffer from a loss of the sale.

Kares failed to comply with the demand, and Collins began this action, seeking to recover from Kares damages in the sum of $4,960, which he alleged that he suffered because his sale of the land was lost through the defendant's refusal to surrender the deed which he held on deposit.

The defendant's answer admitted the holding of the papers, the agreement, the assignment by Pinney, the waiver by Williams, the demand by Collins, and the refusal to comply with said demand. But as his defense the defendant alleged that, at the time the deed and abstract were deposited with him, F. S. Williams and one Rains had left with defendant a contract whereby Williams was to deed the land to one Kursave, and the $1,000 to be deposited to the credit of Williams was to be used to pay a note which Williams owed to the bank, for which Kares was acting, and defendant alleged that he was entitled to retain these papers under the Collins agreement, because that agreement did not provide for payment to F. S. Williams of the $1,000 mentioned in the agreement, but for the deposit of that amount to the credit of Williams in the bank of which Kares was an officer, and for which he was acting in that matter, and that the $1,000 so deposited was to be held by the bank in payment of Williams's note.

In his attempt to prove damages, the plaintiff offered to prove that he had entered into a written contract with one Carver, whereby said Carver agreed to buy the land described in the escrow papers at $66.50 per acre; that when Carver learned of a deed being held on deposit he refused to consummate the purchase, unless that deed was surrendered; that Julia Williams held the title to the land in question, and that she said Collins could insert his own name as grantee in the deed, or the name of any other whom he desired to name as grantee, or that she would make such insertion herself, if he would get possession of the deed, but that she refused to execute another deed while that one was outstanding; and that, when Carver learned that Kares had refused to surrender the deed he tore up both copies of the purchase-money contract and refused to go any further with the deal. And the plaintiff further offered to prove that the actual value of the land at the time he demanded the surrender of the deed and abstract was only $35 per acre, and that Carver was then ready, willing, and able to pay $66.50 per acre for it, and would have done so, if defendant had delivered the deed on such demand.

The trial court admitted so much of the evidence offered as tended to prove the demand and refusal, but excluded most of that offered in support of the plaintiff's contention that the defendant's refusal to surrender the deed made him liable for the loss of plaintiff's profits from the alleged sale. At the close of the evidence the trial court instructed the jury that there had been a breach of his contract by Kares, but that there was no proof that Collins had been damaged thereby, and that the jury should return a verdict in plaintiff's favor for nominal damages only. In accordance with this instruction a verdict for the plaintiff in the sum of $1 was returned. From the judgment entered upon said verdict, and from an order denying a new trial, this apeal is taken.

Appellant's counsel sets forth in his brief numerous assignments of error, but all questions raised by these assignments are embodied in the single question whether the trial court erred in its instruction that the facts entitled appellant to nominal damages only. There was no attempt to prove the value of the abstract held by the respondent, so that any damages which appellant could recover must be based upon the theory that the respondent's refusal to surrender the incomplete deed made him liable for appellant's alleged loss of profits.

The learned trial court proceeded upon the theory that the liability of Kares was that of a bailee, and that his failure to deliver the property in his charge rendered him liable for the value thereof, but not for any consequential or speculative damages resulting from such failure. If this theory is correct, the denial of appellant's offers of proof of loss of profits was not error, and the instruction as to the recovery of nominal damages only was correct.

While counsel on both sides continually refer to the deposit of the deed and abstract as a deposit in escrow, the undisputed facts show that the transaction did not in fact constitute an escrow deposit. The authorities hold that, to make a deed deposited with a third party an escrow, the deed must be completed, except in the matter of delivery, that it must be deposited, so as to pass beyond the control of the grantor, and that the depositary must be authorized by the grantor to deliver the deed to the grantee upon the performance of some act or upon the happening of some contingency. 21 C. J. 866; Fitch v. Bunch, 30 Cal. 208; Lewis v. Prather, 14 Ky. Law Rep. 749, 21 S. W. 538; Bailey v. Security Trust Co., 179 Cal. 540, 177 P. 444.

The deed deposited with Kares named no grantee, nor was it accompanied by any writing authorizing the depositary, or any one else, to insert the name of any grantee. Therefore its delivery by the depositary would not convey title to any one. Its being held by Kares did not hinder Julia Williams, admitted to be the title holder, from making another deed, which would convey the title free from any cloud. A deed without a grantee is a mere nullity. Lund v. Thackery, 18 S. D. 113, 99 N. W. 856; Dal v. Fischer, 20 S. D. 426, 107 N. W. 534; Ballou v. Carter, 30 S. D. 11, 137 N. W. 603.

If Collins had any contract with Julia Williams, whereby he was entitled to a deed of the land, his rights were dependent upon that contract, and not upon the incomplete deed deposited with Kares. The agreement upon which the papers were deposited gave Kares no notice of any rights which Collins might have in the land. Kares was in no way involved in any conveyance which Julia Williams might be required to make to Collins. So far as the record shows, there was no contract binding Julia Williams to make any such conveyance. In the absence of a binding contract

to convey, a deed deposited with a third party is subject to recall by the grantor and is not properly an escrow. 10. R. C. L. 622; McLain et al v. Healy, 98 Wash. 489, 168 P. 1, L. R. A. 1918A, 1161; Nichols v. Oppermann, 6 Wash. 618, 34 P. 162.

As the papers deposited with Kares did not legally constitute an escrow, they did not in any way involve the title of the land, and Kares did not assume any liability, except that of bailee. As bailee, he was liable only for the physical value of the papers which he held, and the learned trial court was correct in holding that the record did not entitle Collins to anything more than nominal damages.

The former decision in this case holds that the fact that the deed deposited with Kares was void did not justify him in refusing to deliver it to the parties, as they had a right to complete it and make it valid. But that decision did not pass upon the measure of damages to be applied under such circumstances. On the second trial of the case, the trial court undoubtedly was influenced by the decision in the former appeal, in instructing the jury that there had been a breach of his contract by Kares, entitling Collins to nominal damages.

But the record shows that the evidence on the second trial went farther than that presented on the first trial. Kares testified that he was acting in behalf of his bank in accepting the deposit, that F. S. Williams owed the bank $1,000, and that he had an understanding with Williams that the $1,000 to be deposited to his credit should be held by the bank to pay that note. Throughout the record and the briefs we find frequent references to the $1,000 to be *paid to* Williams, but the written agreement says $1,000 to be "deposited for the credit of F. S. Williams." If $1,000 were deposited in the bank to the credit of Williams, the relation of debtor and creditor would be established thereby between Williams and the bank, and the bank would be entitled to offset against the $1,000 credit its claim against Williams on the note. Under such circumstances, a waiver by Williams could not vary the terms under which the deposit was originally accepted by Kares, and he was justified in insisting upon compliance with those original terms of acceptance. The theory upon which the case was tried did not prejudice the appellant.

The judgment and order appealed from are affirmed.

POLLEY, SHERWOOD, and BROWN, JJ., concur.
CAMPBELL, P. J., concurs in result.
BURCH, J., disqualified and not sitting.